UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| DOUGLAS POWELL, | ) | |
|       Plaintiff, | ) | |
| | ) | |
|     vs. | ) | 4:06-cv-152-SEB-WGH |
| | ) | |
| AMERICAN ELECTRIC POWER | ) | |
| SYSTEM LONG TERM DISABILITY | ) | |
| (LTD) PLAN and BROADSPIRE | ) | |
| SERVICES, INC., | ) | |
|       Defendants. | ) | |


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**


This cause is before the Court on the Motion for Summary Judgment [Docket No. 13], filed by Defendants, American Electric Power System Long Term Disability Plan ("the LTD Plan") and Broadspire Services, Inc. ("Broadspire"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff, Douglas Powell, brought this suit pursuant to Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Mr. Powell alleges that Defendants improperly denied his continued long-term disability benefits to which he was entitled by the LTD Plan.[1]  Defendants rejoin that: (1) Broadspire is not a proper defendant because, under Seventh Circuit precedent,

---

[1] In his Complaint, Mr. Powell also brings a claim against Defendants for breach of fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(3).  However, in his briefing on this motion, Mr. Powell abandoned that claim.  Therefore, we GRANT Defendants' Motion for Summary Judgment as to the breach of fiduciary duty claim.

the only proper defendant in claims for benefits brought pursuant to § 1132(a)(1)(B) is the

LTD Plan;[2] and (2) summary judgment should be granted in any event because Mr.

Powell's claim for benefits was properly denied as his medical records did not include

significant objective findings to substantiate his claimed disability.  For the reasons

detailed in this entry we GRANT Defendants' Motion for Summary Judgment as to

Defendant Broadspire and DENY Defendants' Motion for Summary Judgment as to

Defendant LTD Plan.


## Factual Background

### *Terms of the LTD Plan*

The LTD Plan provides benefits for individuals who meet the Plan's definition of

"disability."  Under the LTD Plan, "disability" is defined differently for the first two

years of disability as compared to disabilities that continue beyond two years.  AR at 7

(LTD Plan).  In order to qualify for benefits under the plan within the initial twenty-four

months from the disability date, a covered employee must be "disabled" as that term is

defined by the LTD Plan, to wit:

> For the initial 24-month period from the date of disability, "disability" is
> defined as an illness or an injury that requires the regular treatment of a
> duly qualified physician that may reasonably be expected to prevent you

---

[2] We agree.  See Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 872 n.4 (7th Cir. 2001) ("We
have continually noted that 'ERISA permits suits to recover benefits only against the Plan as an
entity.'") (quoting Jass v. Prudential Health Care Plan, Inc., 88 F.3d 1482, 1490 (7th Cir. 1996)).
Thus, we GRANT Defendants' Motion for Summary Judgment as to Defendant Broadspire.

from performing that material duties of *your occupation*.

AR at 8-9 (LTD Plan) (emphasis added).

After the initial 24-month period following the disability date passes, in order to continue to qualify for benefits under the plan, a covered employee must be "disabled" as defined by the LTD Plan, to wit:

> After the first 24 months following your date of disability, "disability" is defined as an illness or injury that requires the regular treatment of a duly qualified physician that may reasonably be expected to prevent you from performing the duties of *any occupation for which you are reasonably qualified by your education, training and experience*.  If you meet the requirements of this "two-year test," you will continue to be considered to be disabled and receive benefits up to the maximum benefit period.

AR at 9 (LTD Plan) (emphasis added).

The LTD Plan further provides that an individual's eligibility to receive LTD benefits is terminated upon the earlier of various occurrences, including:

> The date you fail to submit satisfactory, written proof of objective medical information relating to your illness or injury which supports a functional impairment that renders you to be disabled.

AR at 14 (LTD Plan).

Discretionary authority for benefits eligibility determinations is vested in the third party claim administrator, Broadspire, according to the terms of the Plan:

> Broadspire has full discretion and authority to determine eligibility for benefits and for continued benefits and to construe and interpret all terms and provisions of the plan.  The decision of Broadspire upon final level appeal review shall be final and binding.

AR at 21 (LTD Plan).

3

***Mr. Powell's Claim for Long-Term Disability Benefits***

As an employee of American Electric Power System ("AEP"), Mr. Powell participated under the LTD Plan, subject to its terms.  After working for AEP for approximately fifteen years, Mr. Powell filed for disability benefits, citing problems associated with bipolar affective disorder and depression.  AR at 302.  On August 8, 1992, Mr. Powell was approved for long-term disability benefits based upon his application for benefits and his accompanying physician's statement, and he continued to receive those benefits for the next thirteen years.  Compl. ¶¶ 9-10.  Throughout that time period, Accordia Employers Service ("Accordia") had acted as AEP's third party administrator.  However, on May 1, 2004, the LTD Plan transferred administration of the long-term disability benefits from Accordia to Broadspire, and soon thereafter, Broadspire conducted an evaluation of Mr. Powell's continuing qualifications for long-term disability benefits.  Id. ¶¶ 11-12.

On June 23, 2004, following its initial review of Mr. Powell's file, Broadspire sent a notice to Mr. Powell, requesting that he provide updated medical records from May 2003 to July 2004, in order to substantiate his claim for continuing long-term disability benefits.  AR at 352.  Mr. Powell submitted the requested records and Broadspire supplemented those records with independent physician reviews of its own and an employability assessment report conducted by its Field Care Management Unit to determine feasible employment within fifty miles of Mr. Powell's residence in Aurora, Indiana.  Defs.' Mem. at 4-5.

4

On July 22, 2005, Broadspire sent Mr. Powell a letter, informing him that, after review of the medical records provided by Mr. Powell and the reports that Broadspire itself had gathered, it had determined that Mr. Powell possessed "transferable skills that would fit into the semi-skilled level of employment" and was "able to return to gainful employment." AR at 26. Thus, Broadspire concluded that Mr. Powell no longer met the LTD Plan definition of "disability" and consequently terminated his benefits effective September 1, 2005. AR 26-27. The letter further provided that if Mr. Powell chose to appeal, he should include with his appeal medical documentation containing clinical data supporting his disability. Id.

Mr. Powell filed his first appeal on January 17, 2006. AR at 31-32. Per Broadspire's instructions, Mr. Powell filed additional medical records, including letters from physicians. See AR 256-57, 273-78. Broadspire reviewed the new information and on March 3, 2006, affirmed its denial. AR at 33-35. On April 28, 2006, Mr. Powell filed a second appeal and included additional medical reports, but did not submit any psychiatric-specific findings as requested by Broadspire. AR at 36. Mr. Powell later supplemented his second appeal with physicians' letters explaining the lack of psychiatric evidence. AR at 281. After reviewing the new medical records, in addition to the rest of Mr. Powell's file, on June 9, 2006, Broadspire's Appeal Committee notified Mr. Powell that it had found no basis to overturn the prior decisions, and upheld the denial. AR at 3. After exhausting all of his administrative remedies, Mr. Powell filed his Complaint with this Court on October 18, 2006.

*Clinical Findings Reviewed by Broadspire*

As Mr. Powell had been receiving long-term disability benefits for approximately thirteen years before the events culminating in this litigation occurred, there is quite a sizeable compilation of medical records, physicians' reports, and progress determinations included in the record. For the purposes of this motion, we do not find it necessary to recount each and every examination of Mr. Powell that was conducted throughout the 1990s. It is sufficient to note that Mr. Powell was closely and continually monitored throughout that time period by various physicians, psychologists, and supervisors, who documented his digression from disability at first only in his occupation, to eventually a determination of his disability that related to any occupation at all.

For example, following one of Mr. Powell's earliest examinations, on February 5, 1993, Dr. Melvin S. Gale, M.D. reported that, although he believed that Mr. Powell at the time was temporarily disabled from his previous position, "he is not disabled from any employment at all, but rather could perform at a less demanding position." AR at 65. Dr. Gale went on to clarify that the only parts of the job that he determined that Mr. Powell was unable to perform were the supervisory duties. Id. Following Dr. Gale's report, Mr. Powell expressed his willingness to consider a lower level position within the company, with decreased salary, in order to return to work. See AR 108, 110-111. However, in subsequent Attending Physician Statements, Dr. A.R. Recinto, M.D., determined that Mr. Powell was incapable of functioning effectively in any job. See AR at 116. As a result,

6

on October 23, 1994,[3] AEP's then-current benefit administrator concluded that "Mr. Powell remains totally disabled from engaging in any reasonable occupation at this time." Id.

Throughout the 1990s and early 2000s, Mr. Powell was mainly under the care of his primary physician, Dr. Rizwan Ilyas, M.D., and his therapist, James P. Bauguess, LCSW, both of whom are of the opinion that Mr. Powell has been unable to return to any occupation for a number of years, due to "a chronic history of inability to consistently use his own judgment and to demonstrate his own ability to take the initiate [sic] in effective problem solving," and continues to be so disabled. AR 936. Dr. Ilyas concedes, however, that this determination "is subjective as we do not have lab/x-ray, etc. to check for psychiatric illness. . . ." AR at 937.

As part of Broadspire's review of Mr. Powell's continuing qualification for long-term disability benefits, it requested a peer review of Mr. Powell's medical records. Thus, on April 7, 2005, Dr. Lawrence Burstein, Ph.D, a psychologist, conducted a General Peer Review of Mr. Powell's medical documentation. Dr. Burstein determined that "review of the documentation did not reveal examination findings documenting impairments in the claimant's cognitive, emotional, or behavioral functioning that would preclude him from performing at any occupation at all, from a psychological perspective. While the claimant is taking medications, there were no indications that these medications

---

[3] The electronic copy of this document in the record is blurry and, as a consequence, the Court cannot determine whether the date is October 23rd or October 28th.

in any way preclude him from performing work."  AR at 43.

Broadspire also requested that Dr. George Lester, Psy.D., a psychologist, conduct an independent review of Mr. Powell.  Dr. Lester reviewed a number of Mr. Powell's prior physician statements and also met with Mr. Powell in person, on May 12, 2005, for an evaluation.  See AR at 261.  Dr. Lester's report indicates that although Mr. Powell subjectively reported many symptoms as being "unbearable," Dr. Lester observed that, objectively, Mr. Powell's "IQ score falls within the average range and he was able to retain five of five objects after five minutes and was able to focus sufficiently during the mental status examination and testing.  AR at 269-70.  As part of his evaluation, Dr. Lester administered the Structured Interview of Reported Symptoms ("SIRS") test, which measures possible malingering and symptom feigning, and concluded that the SIRS results "suggest a strong possibility of malingering," AR at 269, and "[w]ith two scale scores falling with the probable feigning range the likelihood of feigning is 81.8%."  AR at 267.

In an addendum to his original report, Dr. Lester concluded that, "[i]f we base the limitations on objective testing, . . . Mr. Powell does not appear to be restricted from performing any and all occupations."  AR at 271.  However, Dr. Lester cautioned that, in light of Mr. Powell's subjective reports of a number of problems, Mr. Powell "likely would need to work in a situation where stress is low" and "would need to work with no more than one or two people at a time and would probably work best alone."  Id.  In sum, Dr. Lester advised that, due to Mr. Powell's limitations, "[h]e would not be able to handle

8

a fast paced job but very likely could handle a variety of assembly, sorting, inspecting and automatic machine operator positions."  AR at 272.

In June 2005, in order to locate feasible employment opportunities for Mr. Powell, Broadspire had its Field Care Management Unit ("FCMU") prepare an employability assessment report, based on Mr. Powell's medical records and reports from his physicians.  See AR at 302.  In compliance with the LTD Plan, any occupation that Mr. Powell might be able to perform would have to have earnings of approximately 60% of the pre-disability wage and exist within sixty miles of Mr. Powell's residence.  AR at 304. Additionally, Mr. Powell's physicians recommended that he be in a low-stress position where he could work alone, or, at most, with one to two other people.  AR at 303.  With those parameters in mind, FCMU determined that Mr. Powell might be suited for work as an Utilities Service Investigator (with an expected total of thirty job openings per year within a sixty-mile radius) or a Meter Reader (with an expected total of four job openings per year within a sixty-mile radius).  AR at 305-307.

After Broadspire's initial denial of his benefits, Mr. Powell was referred by his attorney to another psychologist, Dr. Nicole A. Leisgang, Psy.D., who evaluated him in January 2006.  See AR at 273.  In her report, Dr. Leisgang first reviewed Dr. Lester's conclusions, noting that, although Mr. Powell's SIRS results did show a high likelihood of feigning in two scales, six scales on the SIRS test fell in the honest range, with five of those scales suggesting a 72.2% likelihood of honest responding.  AR at 274. Additionally, Dr. Leisgang reported that, "due to a high false positive rate, the manual

suggests the presence of three or more scales in the probable feigning range to determine malingering." Id.

In her own evaluation of Mr. Powell, Dr. Leisgang observed that "test data was suggestive of anxiety, depression, somatic complaints, dependency needs, social discomfort, and withdrawal." AR 278. She further noted that "[t]est evidence was also indicative of a significant preoccupation with his difficulties and limited coping mechanisms." Id. Dr. Leisgang also reported that Mr. Powell described himself as easily distracted and irritated and as a result, is "scared to drive" and often has "road rage." AR at 275. She concluded that Mr. Powell's "ability to handle job-related stress appears to be seriously impaired, and may result in increased anxiety, depression, withdrawal and even anger control difficulty." AR 278. Thus, Dr. Leisgang was of the opinion that Mr. Powell "is not able to return to work at this time." Id.

On February 10, 2006, Dr. Elana Mendelssohn, Psy.D., a clinical and neuropsychologist, conducted a General Peer Review of Mr. Powell's case. Dr. Mendelssohn determined that, "the submitted documentation outlines a long-standing history of bipolar disorder. Yet, the recent records essentially do not contain examination findings substantiating a level of impairment that would preclude the claimant from performing any and all occupations." AR at 48. However, like Dr. Lester, Dr. Mendelssohn advised that Mr. Powell "would more likely succeed in an occupation in which he can work independently or with 1-2 people." Id. In her report, Dr. Mendelssohn also expressed concern regarding the process by which Dr. Leisgang

10

formulated her opinion about Mr. Powell's functionality, as she claimed that Dr. Leisgang did not administer specific test measures to evaluate his performance and ability to handle job stress.  Id.

On May 1, 2006, at the request of Mr. Powell's attorney, Mr. Powell's primary physician, Dr. Ilyas, summarized the information provided by various psychiatrists and therapists dating back to 2000, which, according to Dr. Ilyas, demonstrates the consistent problems Mr. Powell has faced throughout his treatment.  AR at 282-84.  In response to Broadspire's contention that his clinical opinions (as well as Dr. Leisgang's) were not substantiated by specific examination findings, Dr. Ilyas asserted that, "my reply to that is simply we do not have CAT scans or lab work to quantify the amount of depression or mania or any symptoms that the patient is going through."  AR at 284.  Dr. Ilyas further concluded that, despite some improvement, "I do not believe at this time he is able to function well enough to work 40 hours a week."  Id.

Mr. Powell's attorney referred him to another psychologist, Dr. Jeffrey A. Heller, Psy.D., who reported on April 24, 2006, that Mr. Powell "frequently day dreams, unable to sustain focussed [sic] attention, regressing into periods of bizarre thinking . . . . Therefore, he cannot practicably sustain any type of conventional employment at this point."  AR at 289.  Dr. Heller also expressed concern that, without some sort of intervention, such as psychotherapy and medication management, "Mr. Powell will further decompensate."  AR at 290.  Thus, Dr. Heller concluded that Mr. Powell would not be suited for either of the two occupations that had been suggested by Broadspire.  Id.

After Mr. Powell's initial appeal, Dr. Bunny Falk, Psy.D., a clinical psychologist, conducted an independent peer review of a significant portion of Mr. Powell's medical history, including the information supplied by Dr. Lester, Dr. Ilyas, Dr. Leisgang, and Dr. Jeffrey Heller.  See AR at 1367-1372.  Dr. Falk opined that, "[c]linical impressions [based on Mr. Powell's subjective complaints] offered were not supported by examination findings such as behavioral observations describing signs and symptoms that would demonstrate the presence of functional impairment."  AR at 1370.  After full review, Dr. Falk concluded that, "while the documentation outlines a longstanding history of mental illness, the documentation considered for this review does not substantiate the presence of functional impairment from the psychological perspective that would prevent the claimant from performing any work for the time frame 09/01/05 through the present."  AR at 1371.

Broadspire also requested that Dr. Russell Superfine, M.D., a specialist in internal medicine, conduct a peer review of Mr. Powell's case, with special focus on Mr. Powell's affliction with diabetes.  Dr. Superfine, concluded that:

> [I]n summary although the claimant has a history of diet treated diabetes and edema there are insufficient physical and diagnostic findings to support a level of functional impairment, which would preclude the claimant from performing the duties of any occupation from 09/01/05 through present. The claimant's medications, which include Diazide, have no reported adverse affects or cognitive impairment and will not preclude he ability to work.  The claimant [sic] subjective complaints in themselves would not preclude his ability to work.

AR at 1376-77.

*The Instant Lawsuit*

Following Mr. Powell's second appeal of Broadspire's decision to uphold its denial of his long-term disability benefits, Mr. Powell filed the instant lawsuit on October 18, 2006. In his Complaint, Mr. Powell claims that Defendants ignored the reliable medical evidence he had submitted that supported his benefits claim and arbitrarily and capriciously denied him further long-term disability benefits in violation of ERISA § 502(a). Compl. ¶ 20, ¶ 24. We now address Defendants' Motion for Summary Judgment [Docket No. 13], which was filed on June 18, 2007.


## Legal Analysis

### I.      Standard of Review

Benefit determinations in ERISA cases, pursuant to 29 U.S.C. § 1132(a)(1)(B), are reviewed *de novo*, unless the plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). If the plan vests discretionary authority in the plan administrator, the standard of review is based on an "arbitrary and capricious" analysis. Patton v. MFS/Sun Life Financial Distributors, Inc., 480 F.3d 478, 486 (7th Cir. 2007); see also Morgan v. Cigna Group Ins., 2003 WL 722804, at *6 (S.D. Ind. 2003) (Barker, J.).

Here, the LTD Plan grants discretionary authority to Broadspire; there is no

dispute between the parties on this point.[4]  Accordingly, our review of Mr. Powell's

denial of benefits proceeds according to the "arbitrary and capricious" standard, which

entails a review of the administrator's decision in terms of whether it was reasonable.

Morgan, 2003 WL 722804, at *6; Schaub v. Consolidated Freightways, Inc. Extended

Sick Pay Plan, 895 F. Supp. 1136, 1140 (S.D. Ind. 1995) (Barker, C.J.).  For a decision to

be reasonable, an administrator must have "consider[ed] the factors that are relevant to

the important aspects of the decision, and articulate[d] an explanation that makes a

'rational connection' between the issue, the evidence, the text and the decision made."  Id.

(citing Cuddington v. Northern Indiana Public Service Co. (NIPSCO), 33 F. 3d 813, 817

(7th Cir. 1994); Exbom v. Central States, Southeast and Southwest Area Health and

Welfare Fund, 900 F.2d 1138, 1142-43 (7th Cir. 1990)).

Thus, our function in conducting this review is not "to decide whether we would

reach the same conclusion as the Plan or even rely on the same authority."  Tegtmeier v.

Midwest Operating Engineers Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004)

(citing Carr v. Gates Health Care Plan, 195 F.3d 292, 294 (7th Cir. 1999)).  We can

conclude that the administrator's decision was arbitrary and capricious only if we are very

confident that the plan administrator overlooked something important or otherwise

seriously erred in appreciating the significance of the evidence.  Patterson v. Caterpillar,

---

[4] As we have noted, the LTD Plan provides that Broadspire "has full discretion and
authority to determine eligibility for benefits and for continued benefits and to construe and
interpret all terms and provisions of the plan.  The decision of Broadspire upon final level appeal
review shall be final and binding."  AR at 21.

Inc., 70 F.3d 503, 505 (7th Cir. 1995); Ruiz v. Continental Cas. Co., 400 F.3d 986, 991 (7th Cir. 2005) ("It is not enough that we might disagree with a fiduciary's decision concerning benefits; we cannot overturn a decision to deny benefits unless the decision was 'downright unreasonable.'")  We may not set aside a denial of benefits "if the denial was based on a reasonable interpretation of the plan documents." Mers, 144 F.3d at 1021 (internal citation omitted).  Finally, when evaluating a plan administrator's decision under the arbitrary and capricious standard, a court generally considers only the evidence that was before the administrative body when it made its decision. Hess v. Hartford Life & Accident Insurance Co., 274 F.3d 456, 462 (7th Cir. 2001); Hess v. Reg-Ellen Mach. Tool Corp., 423 F.3d 653, 662 (7th Cir. 2005).

Although we review the denial decision under the arbitrary and capricious standard, even under that deferential standard, "we will not uphold a termination when there is an absence of reasoning in the record to support it." Hackett v. Xerox Corp. Long-Term Disability Income Plan, 315 F.3d 771, 774-75 (7th Cir. 2003).  "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator." Id. at 775 (citing Halpin v. W.W. Grainger, 962 F.2d 685, 688-89 (7th Cir. 1992)).  The Seventh Circuit has noted that "substantial compliance is sufficient to meet this requirement." Id. (citing Halpin, 962 F.2d at 690).  "In order to meet the 'standard of substantial compliance, the administrator must weigh the evidence for and against [the denial or termination of benefits], and within reasonable limits, the reasons for rejecting

15

evidence must be articulated if there is to be meaningful appellate review.'" <u>Kroll v.</u>
<u>Prudential Ins. Co. of America</u>, 2005 WL 1865509, at *14 (S.D. Ind. 2005) (Barker, J.)
(quoting <u>Halpin</u>, 962 F.2d at 695).  Thus, "[c]onclusions without explanation do not
provide the requisite reasoning and do not allow for effective review."  <u>Hackett</u>, 315 F.3d
at 755 (citing <u>Halpin</u>, 962 F.2d at 693).

## II.     Mr. Powell's ERISA Claim

ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides that a participant
in an employee benefit plan may bring a civil action to recover benefits due under the
terms of the plan.  Mr. Powell asserts that Broadspire improperly denied his benefits to
which he was entitled under the LTD plan.

In this motion for summary judgment, the LTD Plan asserts that Broadspire's
decision to deny benefits to Mr. Powell was not an abuse of discretion.  Rather, it argues
that the denial was based on a reasonable interpretation of the plan documents, which it
claims failed to provide significant objective findings that supported Mr. Powell's
contention that he is unable to work in *any* occupation.  Mr. Powell rejoins that he "was
not afforded the opportunity to present a meaningful argument, for the continuation of his
LTD benefits, due to the absence of specific reasoning for the denial in Defendant's
letters."  Pl.'s Resp. at 7.  He emphasizes that the LTD Plan failed to cite to specific
medical records to explain how it came to the conclusion that his education, training, and
experience made him capable of obtaining and maintaining the occupations that it cited as

16

possible employment opportunities.

We agree that Mr. Powell was denied a meaningful opportunity to present his case

for the continuation of his long-term disability benefits in the appeals process.

Broadspire's initial denial letter provided only bare, conclusory statements without

evidentiary support or explanation.  The denial made no mention of specific documents or

evidence that was reviewed in making the decision to deny Mr. Powell's benefits; it

merely stated that "[t]he medical information received from your attending providers was

taken into consideration" and "[b]ased on this information you are able to return to

gainful employment."  A.R. 26.  Furthermore, the denial letter completely failed to

specify the basis underlying the decision to deny Mr. Powell's benefits.  In essence, this

failure denied Mr. Powell his first bite at the apple of the appeals process, which tainted

the process from the start.  See Halpin, 962 F.2d at 691 ("[I]t is important to note that the

earlier process appears to have been seriously flawed.  Consequently [claimant's] ability

to present an effective case in the review process was no doubt significantly hampered at

the outset.").

The second denial letter provided more detailed information, including a list of the

specific documents and medical records that had been reviewed, and noted that, while Mr.

Powell's physicians had provided medical opinions based on subjective findings, "there

was a lack of sufficient medical evidence to substantiate [Mr. Powell's] inability to

perform any occupation."  A.R. 35.  However, Broadspire failed to explain the specific

type of medical evidence that it would consider sufficient to demonstrate disability as it

was defined under the LTD Plan until the third and final denial letter.  In that letter, the

Broadspire Appeals Committee stated that it had:

> determined that there was a lack of sufficient recent medical evidence (i.e.
> current clinical assessment findings to corroborate self-report inventories,
> of impairment(s) in the area of cognitive functioning, emotional functioning
> or behavioral control precluding work; detailed results of performance-
> based tests of psychological functioning with standardized scores; evidence
> of an observed formal thought disorder; evidence of demonstrated problems
> with receptive or expressive skills; detailed behavioral observations
> describing the frequency, severity and intensity of observed psychiatric
> symptoms, in objective mental status terms, to preclude work; evidence of
> at-risk behaviors reported or noted; documentation of any hypoglycemia
> with neurological sequelae, blood sugars over 400 with glycemic instability;
> evidence of any other complication of diabetes, such as retinopathy,
> nephropathy, neuropathy or ulceration; documentation of any
> cardiovascular or renal disease; documented medical evidence of any
> significant adverse effects or cognitive impairment [claimant] experienced
> as a result of prescribed medication; etc.) to substantiate significant
> impairments in functioning which would have prevented Mr. Powell from
> performing the duties of any occupation as of 9/1/05.

A.R. 3.

This letter clearly set the stage for one more review by finally providing Mr.

Powell with detailed information regarding the type of medical evidence that the plan

administrator was seeking.  However, by the time the LTD Plan provided Mr. Powell

with this necessary and specific guidance to assist him in presenting his appeal, the

administrative appeals process had already been exhausted.  Consequently, Mr. Powell

has not been afforded the opportunity to present such evidence, assuming it is available or

obtainable.  It would be patently unfair to prevent Mr. Powell from having that chance.

Thus, a remand for further administrative procedures is clearly appropriate.  Proceedings

on remand should allow Mr. Powell to present documents of the type noted in

Broadspire's June 9, 2006, denial letter that would support his claim for long-term

disability benefits.  In providing this additional level of administrative proceedings, the

administrative record can be augmented in the event that Mr. Powell again seeks judicial

review of the LTD Plan's decision under ERISA.


**III.    Conclusion**

      For the reasons detailed above, Defendants' Motion for Summary Judgment is

<u>GRANTED</u> on Plaintiff's now abandoned claim of breach of fiduciary duty and on the

grounds that Defendant Broadspire is not a proper defendant in this action.  We <u>DENY</u>

Defendants' Motion for Summary Judgment as to Defendant LTD Plan, however, and

remand this case for further action consistent with this opinion.  This matter shall be

administratively closed on the Court's docket, with leave to reopen within 30 days

following a final decision on remand.  Failure to seek to reopen this cause of action

within the allotted time will prompt an order of dismissal with prejudice.



Date:    _____03/28/2008_____

                                                    _____
                                              SARAH EVANS BARKER, JUDGE
                                              United States District Court
                                              Southern District of Indiana

Copies to:
Edward E. Hollis
BAKER & DANIELS
eehollis@bakerd.com

Michael John Nader

BAKER & DANIELS
michael.nader@bakerd.com

Mark W. Napier
FREKING & BETZ
mnapier@frekingandbetz.com